IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANNON LOVELANCE, fka  3:17-CV-00318-BR
SHANNON FLANAGAN,

        OPINION AND ORDER

    Plaintiff,

v.

DEKRA NORTH AMERICA, INC., a
foreign business corporation,

    Defendant.


**SUE-DEL McCULLOCH**
1211 S.W. Fifth Avenue
Suite 2350
Portland, OR 97204
(503) 221-9706

    Attorney for Plaintiff

**CHRISTOPHER E. HAWK**
**FLORENCE Z. MAO**
Gordon & Rees Scully Mansukhani LLP
121 S.W. Morrison St
Suite 1575
Portland, OR 97204
(503) 222-1075

    Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion (#5) to Compel Arbitration.  For the reasons that follow, the Court **GRANTS** Defendant's Motion and **DISMISSES** this matter **without prejudice**.

## BACKGROUND

The following facts are taken from the Complaint and the parties' filings related to Defendant's Motion to Compel Arbitration.

In October 2012 Plaintiff Shannon Lovelance accepted a position as Vice President of Sales with Defendant DEKRA North America, Inc., an international company whose products and services include motor-vehicle testing, damage reports, accident analyses, technical reports, safety tests, materials testing, and initial and in-service training.

Plaintiff states in her Declaration that she received "a large packet of papers and was instructed to sign and return them promptly when [she] accepted employment with [Defendant] in late October 2012."  Decl. of Shannon Lovelance at ¶ 1.  The large packet of papers included an Employment Agreement that provided: "Any proceedings to enforce the terms of this Agreement . . . shall be brought pursuant to the terms of the **Mutual Agreement to Arbitrate Claims attached hereto as Exhibit 2**."  Decl. of Cherele

2 - OPINION AND ORDER

LaVack, Ex. 1 at 8 (emphasis in original). The Mutual Agreement to Arbitrate Claims referenced in and attached to the Employment Agreement signed by Plaintiff provides:

> **CLAIMS COVERED BY THE AGREEMENT**
>
> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("Claims"), past, present or future, whether or not arising out of my application for employment, assignment/employment, or termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, insurers, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the Company's benefit plans, or the plan's sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.
>
> * * *
>
> The claims covered by this Agreement include, but are not limited to: claims for discrimination (including, but not limited to race, sex, sexual harassment, . . . medical condition, handicap or disability).
>
> * * *
>
> Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action in any way related to any claim covered by this Agreement.

LaVack Decl., Ex. 1 at 13-14. Plaintiff signed the Employment Agreement on October 19, 2012, and signed the Mutual Agreement to Arbitrate Claims on October 24, 2012. Above the signature line on the Arbitration Agreement was the following statement:

3 – OPINION AND ORDER

> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS
> AGREEMENT; THAT I UNDERSTAND ITS TERMS; THAT ALL
> UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY
> AND ME RELATING TO THE SUBJECTS COVERED IN THE
> AGREEMENT CONTAINED IN IT, AND THAT I HAVE ENTERED
> INTO THE AGREEMENT AND NOT IN RELIANCE ON ANY
> PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER
> THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF. I
> UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM
> GIVING UP MY RIGHT TO A JURY TRIAL.
>
> I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE
> OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY
> PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF
> THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

LaVack Decl., Ex. 1 at 17-18.

Plaintiff began working for Defendant in November 2012.[1] Plaintiff left her employment with Defendant in April 2015.

On December 7, 2016, Plaintiff filed a complaint against Defendant in Multnomah County Circuit Court alleging claims for gender discrimination in violation of Oregon Revised Statutes § 659A.030 and pregnancy discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, arising from Plaintiff's alleged constructive discharge by Defendant after Plaintiff announced her pregnancy in April 2014 and left her employment with Defendant in April 2015. Plaintiff served Defendant with the complaint on February 6, 2017.

On February 27, 2017, Defendant removed the matter to this

---

[1] In her Complaint Plaintiff alleges she began working for Defendant on November 12, 2012. In her Declaration in Support of Plaintiff's Response to Defendant's Motion Plaintiff states she began working for Defendant on November 5, 2012.

Court on the grounds of diversity and federal-question jurisdiction.

On March 28, 2017, Defendant filed a Motion to Compel Arbitration in which it seeks an order compelling arbitration and dismissing this matter. The Court took Defendant's Motion under advisement on May 5, 2017.

## STANDARDS

Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.,* "in response to widespread judicial hostility to arbitration." *Am. Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013). The FAA provides arbitration agreements generally "shall be valid, irrevocable, and enforceable." *Knutson v. Sirius XM Radio, Inc.,* 771 F.3d 559, 564 (9th Cir. 2014). *See also* 9 U.S.C. § 2.

> [C]ourts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes and the rules under which that arbitration will be conducted. That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been overridden by a contrary congressional command.

*Am. Exp. Co.,* 133 S. Ct. at 2309 (quotations omitted).

"Under the FAA, the basic role for courts is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Knutson*, 771 F.3d at 564-65 (quotation omitted).

5 - OPINION AND ORDER

"[A] district court may either stay the action or dismiss it outright when . . . the court determines . . . the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). *See also* 9 U.S.C. §§ 3, 4.

## **DISCUSSION**

As noted, Defendant seeks an order compelling arbitration and dismissing this matter. Defendant asserts the Arbitration Agreement signed by the parties is valid and enforceable and Plaintiff's claims are subject to the agreement. Plaintiff, on the other hand, asserts the Court should not enforce the Arbitration Agreement because it is procedurally and/or substantively unconscionable.

When grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce arbitration agreements. 9 U.S.C. § 2. *Knutson*, 771 F.3d at 564. The Supreme Court recently "reaffirmed that the savings clause preserves generally applicable contract defenses such as unconscionability, so long as the doctrines are not 'applied in a fashion that disfavors arbitration.'" *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012)(quoting *AT&T Mobility LLC v. Conception*, 131 S. Ct. 1740, 1747 (2011)).

Pursuant to Oregon law, a "party asserting unconscionability

6 - OPINION AND ORDER

bears the burden of demonstrating that the arbitration clause in question is, in fact, unconscionable." *Livingston v. Metropolitan Pediatrics, LLC,* 234 Or. App. 137, 151 (2010)(citing *W.L. May Co., Inc. v. Philco-Ford Corp.*, 273 Or. 701, 707 (1975)). Whether a contract is unconscionable is a "question of law to be decided based on the facts in existence at the time the contract was made." *Livingston*, 234 Or. App. at 151.

"In Oregon, the test for unconscionability has both procedural and substantive components." *Id*. (citing *Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 556 (2007)).

> Procedural unconscionability refers to the conditions of contract formation and involves a focus on two factors: oppression and surprise. Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice. Surprise involves the question whether the allegedly unconscionable terms were hidden from the party seeking to avoid them.

*Livingston*, 234 Or. App. at 151. Substantive unconscionability, in turn, "generally refers to the terms of the contract, rather than the circumstances of formation, and the inquiry focuses on whether the substantive terms unfairly favor the party with greater bargaining power." *Id*.

I. **Procedural Unconscionability**

Plaintiff alleges the Arbitration Agreement is procedurally unconscionable because even though it is undisputed that Plaintiff received and signed the Employment Agreement and the

7 - OPINION AND ORDER

Arbitration Agreement, the Arbitration Agreement was included in the large packet of documents that she was directed to sign and to return "promptly." Plaintiff asserts it was "basically an adhesion contract" because it was "not negotiated and [Plaintiff had] no meaningful opportunity . . . to object or revise terms." Plaintiff concedes she signed the acknowledgment that she "[had] been given the opportunity to discuss this agreement with my private legal counsel and ha[d] availed [her]self of that opportunity to the extent [she] wish[ed] to do so," but notes she did not consult counsel before signing the Agreement. Plaintiff asserts she "did not understand the impact of the arbitration provision."

In *Sprague v. Quality Rests. Northwest, Inc.*, the court evaluated circumstances of an arbitration clause that was contained in an employee handbook and an acknowledgment signed by the employee that she had read the handbook. The court concluded the agreement was not procedurally unconscionable as follows:

> The arbitration agreement at issue here is not entirely free from procedural unfairness. It is part of a classic contract of adhesion, that is, an agreement between parties of unequal bargaining power, offered to the weaker party on a "take-it-or-leave-it" basis. *Reeves v. Chem Industrial Co.*, 262 Or. 95, 101 (1972). Thus, the circumstances of contract formation were somewhat oppressive. However, under Oregon law, the fact that a contract is adhesive does not alone render it unenforceable. Further, there is no evidence of any other oppressive circumstances, nor was the agreement brought about by deception, as was the arbitration clause in *Vasquez-Lopez*, 210 Or. App.

8 - OPINION AND ORDER

>           at 568.  Rather, it is clearly and fully described
>           in the employee handbook, with the key provisions
>           set off in italics and boldface; the acknow-
>           ledgment form as well sets off the agreement in
>           italics.  The language is not technical and the
>           typeface is large.  We therefore conclude that,
>           procedurally, the agreement was no more
>           unconscionable than the typical employment,
>           consumer, or service contracts that are a common
>           feature of contemporary commercial life and that
>           Oregonians sign (and Oregon courts enforce) as a
>           matter of course.

213 Or. App. 521, 526 (2007)(citations omitted).

Here, as in *Sprague,* the Arbitration Agreement was clearly and fully described with its key provisions set out in all caps and bold.  Plaintiff signed both the Employment Agreement and the Arbitration Agreement.  Plaintiff does not allege she did not see or know about the Arbitration Agreement.  Plaintiff alleges only that she did not understand the impact of the Agreement.

Oregon state and federal courts have repeatedly held employment-related agreements are not procedurally unconscionable solely based on unequal bargaining powers.  In any event, the facts here establish Plaintiff was a sophisticated employee who negotiated the other terms of her employment such as salary and her work location.  In *Jensen v. Fisher Communications, Inc.*, the court found an employment agreement was not procedurally unconscionable when the plaintiff-employee demonstrated bargaining power through his ability to negotiate express terms of the contract, including his salary and work schedule.  No. 3:14-cv-00137-AC, 2014 WL 685195, at *7 (Dec. 3, 2014).  The

9 - OPINION AND ORDER

court also noted the heading of the arbitration clause was in bold and underlined, and "language explaining the dispute-resolution process [was] not hidden in fine print or prolix, or stated in terms incomprehensible to a layperson. Further, at only nine pages, the Employment Agreement is not so long as to conceal the arbitration agreement by the sheer volume of material." *Id*. The court presumed the plaintiff had read the employment agreement, including its arbitration clause, before signing and was not otherwise surprised by its terms. *Id*., at *7. *See also Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 152 (2010)(the court held there was not any contract of adhesion when the plaintiff-employee was "highly educated," reviewed the employment agreement, and signed the agreement without making any changes).

As noted, Plaintiff here is a sophisticated, highly-qualified applicant who was offered an executive-level position as Vice President of Sales at an international company. Plaintiff concedes she was able to negotiate express terms of the contract, including her start date and relocation reimbursement in the amount of $15,000. Plaintiff signed the statement indicating that she had the opportunity to review the Employment and Arbitration Agreements, both of which were 18 pages in total. Moreover, the Arbitration Agreement was not written in fine print or obscured from view and was clearly labeled "MUTUAL AGREEMENT

TO ARBITRATE CLAIMS."

Finally, Plaintiff fails to establish that the Arbitration Agreement was the product of deception or compulsion. *See, e.g., Carey v. Lincoln Loan Co.*, 203 Or. App. 399, 422 (2005) ("Unconscionability may involve deception, compulsion, or lack of genuine consent.").

On this record the Court concludes Plaintiff has not established the Arbitration Agreement is procedurally unconscionable.

## II. Substantive Unconscionability

"Substantive unconscionability generally refers to the terms of the contract as opposed to the circumstances of formation and focuses on the one-sided nature of the substantive terms." *Sprague*, 213 Or. App. at 525 (quotation omitted). "'The primary focus . . . [is] substantial disparity in bargaining power, combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable." *Id*. (quoting *Carey*, 203 Or. App. at 422-23)).

Oregon courts have concluded "an approach that focuses on the one-sided *effect* of an arbitration clause — rather than on its one-sided *application* — to evaluate substantive unconscionability is most consistent with the common law in Oregon regarding unconscionability." *Motsinger v. Lithia Rose-*

11 - OPINION AND ORDER

*FT, Inc.*, 211 Or. App. 610, 623 (2007)(emphasis in original). Ultimately the Court "must determine . . . whether, given . . . unequal bargaining power, the effect of the arbitration clause makes the parties' respective obligations so unbalanced as to be unconscionable." *Id*. at 625. "[T]hat inquiry [often] turns on whether plaintiff's opportunity to vindicate her rights in an arbitral forum, when compared to the remedies available to defendant, is substantively unconscionable." *Id*.

Plaintiff asserts the Arbitration Agreement is substantively unconscionable because it limits Plaintiff to propounding only one set of discovery requests and one deposition.

As Defendant points out, however, the Arbitration Agreement equally limits Defendant to propounding one set of discovery requests and one deposition and also permits either party to request additional discovery from the arbitrator. The Arbitration Agreement also provides the arbitration procedures apply equally to both parties including selection of arbitrators, the right to take depositions, and the right to discovery.

On this record the Court concludes Plaintiff has not established there was a "substantial disparity in bargaining power" between her and Defendant nor that terms in the Arbitration Agreement are unreasonably favorable to Defendant. The Court, therefore, concludes Plaintiff has not established the Arbitration Agreement is substantively unconscionable.

Accordingly, the Court grants Defendant's Motion to Compel Arbitration.

**CONCLUSION**

For these reasons, the Court **GRANTS** Defendant's Motion (#5) to Compel Arbitration and **DISMISSES** this matter **without prejudice**.

IT IS SO ORDERED.

DATED this 30th day of June, 2017.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge